**Giles E. BULLOCK and the E. C. Brown Company**

v.

**UNITED STATES.**

No. 533–53.

United States Court of Claims.

July 13, 1959.

Francis P. Keiper, Syracuse, N. Y., for plaintiffs. J. H. Littlepage, Washington, D. C., was on the briefs.

Carl D. McManamy, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

WHITAKER, Judge.

Plaintiffs sue for compensation for the use of an alleged invention, on which plaintiff Bullock holds United States Letters Patent, No. 2,105,451. Plaintiff E. C. Brown Company is a licensee under said patent. Plaintiff Bullock is president of E. C. Brown Company.

The use of the alleged invention by defendant is not denied and defendant admits it had no license from the patentee to do so. It defends on the ground that the patent is invalid, because the alleged invention was not novel, having been anticipated by the prior art.

The invention is thus described in claim 1, upon which plaintiffs rely, in which, following the report of the Trial Commissioner, we have italicized and numbered and set apart the key elements.

"Claim 1

"In a pressure tank the *combination* of

"(1) a cylindrical *tank* open at one end,

"(2) an open *head* for said open end, said head comprising

"(2a) a substantially cylindrical *flange* formed inwardly at both ends to provide a larger opening

at one end and a smaller opening at the other end of the flange,

"(1a) the open end of said tank being attached to said flange at the smaller opening thereof to provide a *seat* surrounding the open end of said tank,

"(3) a *cover* for said opening in said head adapted to move into the larger opening of said head and be seated on the said seat surrounding the smaller opening thereof and the opening of said tank,

"(2b) inclined and spaced locking *flanges* formed by the overhanging flange surrounding the larger opening of said head,

"(4) a *locking bolt* extending diagonally over said cover and mounted to rock thereon,

"(5) a *cam* carried at the ends of said bolts and projecting radially from said cover so as to move thru the spaces between said locking flanges on the insertion of said cover into the head, and engage under said flanges on the rotation of the cover on the seat of the head and

"(6) *means* for rocking said bolt to move said cams against said locking flanges and force said cover onto said seat."

A simpler and broader description of the alleged invention is set out in claim 8, upon which plaintiffs also rely, as follows:

### "Claim 8

"In a pressure container the *combination* of

"(1) a *seat*,

"(2) a *cover* for said seat,

"(3) a *cam member* associated with said seat,

"(4) a *locking member* on said cover and movable therewith for engagement with said cam member to effect a preliminary sealing between said cover and said seat, and

"(5) *cam means* provided on said locking member and movable with respect to said cover and cooperating with said seat cam member to effect further locking and sealing between said cover and said seat.

The other claims relied on by plaintiffs are 2, 7 and 9. They are set out in detail in the Findings of Fact. They add nothing to what is claimed in claims 1 and 8.

The result aimed at by the alleged invention was to provide a relatively large diameter cover for a pressure tank or container that would prevent the escape of the contents of the tank when pressure was applied thereto. This was accomplished by providing: (1) a head on the tank, including a top locking flange running in a plane inclined with respect to a seat-forming flange; and (2) a cover to which was attached a locking bolt having ends to engage the inclined locking flange. As the cover rotates, the locking bolt engages the inclined locking flange to force the gasket encircling the edge of the cover closer and closer against the head, until the opening in the tank was closed. This bolt which fitted against the inclined locking flange had a cam at each end, that is, one part of the surface of the bolt was flat and the rest of it was round. To this bolt there was attached a handle or other means for partially rotating it. When the bolt was inserted into the head, the flat part of the cam was in contact with the inclined locking flange. Since the diameter of the bolt through the cam was less than its diameter apart from the cam, when the bolt was rotated sufficiently to remove the flat part of the cam from contact with the locking flange, the cover was forced still tighter against the head, completing the seal, and preventing the escape of the contents of the tank.

The contrivance worked successfully; but defendant says that each of its elements was well known, as was also the use of them in the same combination claimed by plaintiffs, and to accomplish the same result.

Defendant cites first the Davis patent, No. 2,036,125. This was not cited by the Examiner in the Patent Office. The Davis patent is designed to do the same thing, and it employs the same principles

as the patent in suit. It, too, has inclined flanges against which cams on each end of a locking bail attached to the cover operates. As the Davis cover is rotated, the cams, sliding along the inclined flanges, draw the cover tighter and tighter. When the bail is in a horizontal position, the flat portions of the cams are in contact with the flanges; when it is pulled up, the flat portions of the cams at the end of the bail no longer engage the flange and the round surfaces of the cams are drawn into contact with it. Since the diameter of the round surfaces is greater than through the flat surface of the cam, the gasket underneath the cover is drawn still tighter against the head of the tank, completely sealing it.

The basic elements in the two patents are the same, and the same principles are applied. The only difference in the two is, first, that in the Davis patent the inclined flange against which the cam on the cover operates is on the outside of the head of the tank, whereas in the Bullock patent it is located at the top and within the head of the tank; and, second, in the Davis patent the cams on the cover are at the end of a handle or bail and rotate with the bail; whereas in the Bullock patent they are at the end of a bolt attached to the cover, which is rotated by a handle, or other means. However, the inclined flanges in the two structures perform the same function, and the bolt, with its cams, and the bail, with its cams, perform the same function. One is an immaterial variation from the other. With either one the same result is obtained. Neither is an improvement over the other.

Plaintiffs say the Davis device is not constructed to withstand greater than atmospheric pressure within the tank, whereas the Bullock patent is. We see no reason why the Davis device would not withstand pressure as great as the Bullock device, if each was constructed out of the same material.

Furthermore, while Bullock's claims mention a pressure tank, we find no recital that the alleged invention is limited to containers of a particular material or subjected to pressures of 100 pounds per square inch, or any particular amount of pressure. The amount of pressure each will withstand depends on the strength of the material out of which they are constructed, rather than on the two methods of sealing the cover over the opening of the tank.

Plaintiffs also contend that the space shown in figure 7 of the Davis patent, between cam 14 and the inclined surface 6, precludes preliminary sealing. We do not agree. The inclined surfaces 6 in the Davis patent are the equivalent of the inclined and spaced locking flanges in the Bullock patent. The mere fact that the Davis surfaces 6 are inclined indicates to us that the ends of the locking member 15 are designed to engage said surfaces to effect preliminary sealing, prior to a rotary movement of cams 14, to effect further sealing pressures.

Nor do the Bullock patent claims specify a channel ring having low pitch cams to effect uniform increase in pressure against a gasket, as plaintiffs now say. The patent claims in suit are unambiguous and are not saved by any such limitations plaintiffs may now desire to have read into them.

Any alterations or modifications of the prior art structures to produce the structure illustrated in the patent in suit are believed to be mere matters of engineering design obvious to one having ordinary skill in the container closure art at the time the Bullock patent application was filed.

Defendant says that Bullock's alleged invention was also disclosed by the Austrian patent No. 35,780 issued to Hoffmann. We agree. It shows, not too clearly, to be sure, an inclined flange within the head of the tank with which a bar on the cover head is in contact. As the cover is rotated this bar, sliding along the inclined flange, draws the cover progressively tighter against the head of the tank. To effect final sealing, a cam operated by a handle attached to a bolt on the cover is partially rotated, moving the cam surface of the bolt down against the bar, forcing the cover still tighter

against the head of the tank. In this case the cam is formed by an enlargement or bulge on the bolt, instead of a depression or flat surface.

The only difference in this device and the Bullock device is that in Hoffmann the cam is at the center of the bolt or bar, whereas in Bullock the cams are at the end of the bolt. This is a slight variation, which would be obvious to one skilled in the art.

The Trial Commissioner in his findings, which we have adopted without change, discusses in detail the claims of the patent in suit, and compares them with the Davis patent, as well as with the Austrian patent issued to Hoffmann, and other prior patents. His discussion clearly shows none of the elements of the Bullock device were new, and that before the application for the Bullock patent these elements had been combined as Bullock combined them, in order to produce the same result. We must, therefore, conclude that the Bullock patent is invalid for lack of novelty.

Plaintiffs are not entitled to recover for defendant's use of Bullock's alleged invention, and plaintiffs' petition will be dismissed.

It is so ordered.

DANAHER, Circuit Judge, sitting by designation, JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.

Findings of Fact

The court, having considered the evidence, the report of Trial Commissioner Donald E. Lane, and the briefs and argument of counsel, makes findings of fact as follows:

1. This is a patent suit under Title 28 U.S.C., § 1498, for reasonable and entire compensation for the unlicensed use or manufacture by or for the defendant of certain inventions covered by United States Letters Patent. Prior to trial, the plaintiffs limited their claim to one patent, said patent being Bullock patent No. 2,105,451, issued January 11, 1938, to plaintiff Giles E. Bullock, a resident of Rochester, New York. Said plaintiff is the record owner of said patent. Plaintiff E. C. Brown Company, a corporation of New York, is licensee under said patent. Giles E. Bullock is president of The E. C. Brown Company and has a substantial financial interest in that company. The parties agreed to a separation of issues for trial, and that the issues of validity and of infringement of the Bullock patent be first determined upon full proofs, findings of fact, and argument of counsel, and agreed that any accounting issue be deferred.

2. Bullock patent No. 2,105,451, hereinafter referred to as the patent in suit, issued upon an application for patent filed on April 20, 1936, and entitled "Pressure Tank." The general subject matter of the patent in suit relates to sprayers including a pressure tank having a relatively large diameter opening provided with a cover. The cover is provided with a locking bolt which effects first initial and then final sealing of the cover to the tank opening. The drawings of the patent in suit show a pressure tank of a type sometimes utilized to contain fluid under pressure for spraying insecticides, disinfectants or other chemicals. As illustrated in figures 1, 2 and 3 [1] of the patent drawings, the pressure tank 1 is provided with an open dome 2. A flanged head 3 secured to the open end of dome 2 provides a closure seat 5. The closure or cover 10 has a flange 11 engageable with a gasket 12 on the seat 5. The cover 10 carries a locking bolt 15 having end portions engageable with inclined flanges 6 and 7 at the top of the head 3. A partial rotation of the cover 10 causes the ends of the bolt 15 to engage the undersides of the inclined flanges 6 and 7 and to thereby effect initial sealing contact between the cover flange 11 and the seat 5. The bolt 15 is provided with cam portions 18 near each end and is provided with a handle

1. Reproduced (A) at end of findings.

17 for partially rotating the bolt. After initial sealing contact has been made, the locking bolt 15 is turned by handle 17 to cause the cam portion 18 to increase the pressure of the cover flange 11 against the seat 5. The provision of initial and final sealing pressures permits the use of relatively large diameter covers on such pressure tanks. The pressure pump 22 and its operating handle are not features of the invention here in suit.

3. The specifications included in the patent in suit describe the sprayer illustrated in figures 1, 2, and 3 in detail as follows:

"As illustrated in the various figures of the drawings the pressure tank 1, which is suitably made up of sheet metal, is provided with an open dome 2 to which is fastened the open head 3. This head comprises a substantially cylindrical flange having a substantially horizontal flange 4 turned in at the bottom to reduce the opening in the head and provide anchoring means for the open end of the dome 2 to be folded or spun thereover and suitably fastened and sealed thereto. In this way a closure seat 5 is formed at the top of the dome within the open head 3 which surrounds it.

"At the top of the open head 3 are provided a pair of concentrically arranged locking flanges 6 and 7 which are turned inwardly of the head and are inclined in the same direction with suitable spaces forming the notches 9, 9 separating these locking flanges at diametrically opposite points at the top of the open head.

"The closure member for the open head, which is adapted to move in and out of the head between the locking flanges 6 and 7, comprises the substantially cup-shaped member 10 which is adapted to telescope into the open end of the dome 2 to center itself thereon within the open head and is provided at the top with the outwardly flaring flange 11 to form a seat or support for the cover. A compressible gasket 12 surrounds the outside of the closure member below its seat or supporting flange 11 in order that this gasket may rest on the seat 5 and be compressed thereon to seal the closure member over the large opening provided in the top of the tank by the head 3.

"Suitably mounted within the cup-shaped closure member is an inverted U-shaped handle 13 which extends upwardly therefrom and diagonally across the cover. In the sides of this handle are provided the bearings 14, 14 which are in line with each other and have the locking bolt 15 mounted to rock therein. This locking bolt is circular in cross section and is held diametrically in place on top of the closure member so as to have its ends project radially from the edge of the supporting flange 11 of the closure member. The central portion of the locking bolt is offset at 16 substantially in the form of a V and at the apex of the V-shaped offset is mounted the handle 17 with which the locking bolt is adapted to be rocked by raising and lowering the handle as illustrated in Figure 3 of the drawings.

"The ends of the bolt 15, which project from the perimeter of the closure member, as above pointed out, have a portion of their periphery cut away as illustrated at 18 in Figure 3 of the drawings. This reduces the width of the free ends of the locking bolt at the cut away portion and provides the bolt with a pair of cams which, when rocked by the handle 17 from a position in which the cut away flat or eccentric surface of the cams engage the under side of the locking flanges 6 and 7 to a position in which the cylindrical concentric surface of the cams engage the locking flanges, depress the closure member and compress the gasket 12 between the flange 11 of the cover and the seat 5 in the head and thus seal the closure member over the opening in the head.

"To bring the locking bolt 15 in position for the sealing operation, above described, the closure member is first locked to the head by the bolt. This is done by inserting the closure member into the head with the radially projecting ends of the bolt 15 passing thru the notches or spaces 9, 9 between the locking flanges 6 and 7. After the closure member is seated on the seat 5 of the head, the handle 17 is raised so that the flat or eccentric portion of the cams formed on the ends of the bolt face upwardly and thus reduce the vertical width of the ends of the bolt 15 to permit their movement under the inclined locking flanges 6 and 7 on the rotation of the closure member by means of its handle 13. The closure member is rotated until the cams of the locking bolt are wedged under the locking flanges and prevent a further rotating movement of the closure member on the seat 5. This securely locks the closure member to the seat and in addition provides a preliminary sealing of the closure member thereon. To complete the sealing of the closure member on the seat, the handle 17 is then rocked from the dotted line position to the full line position illustrated in Figure 3 which, as above pointed out, results in a further depression of the closure member and a resultant compression of its gasket on the seat 5. The closure member is thus hermetically sealed to the seat in the head of the pressure tank and will withstand any pressure built up in the tank.

"A double acting lock is thus provided for the closure member of the tank in which the preliminary locking action secures the closure member to the head and positions it on the seat so that but a short and quick movement of a handle provides the final and hermetic sealing of the closure member on the tank. Similarly a quick and short reverse movement of the handle releases the seal of the opening in the head by the closure member without however unlocking the closure member from the head. Thus if the handle 17 should inadvertently be operated to effect a release of the seal of the opening by the closure member while the tank is under pressure, the closure member is still held locked to the head and will not be blown off therefrom but will simply be released to move the limited distance allowed by the difference in the width of the cams of the locking bolt 15.

"This latter action may be taken advantage of in the removal of the closure member from the head if for any reason the gasket of the closure member sticks to the seat 5 and will not readily disengage itself therefrom. For this purpose the tank is put under sufficient pressure so that on the release of the cover from the compression of the cams of the locking bolt, the pressure within the tank will slightly raise the cover as above pointed out and cause a uniform release of the gasket around the seat to permit the removal of the closure member from the head. The bolt 15 and the cam members formed on the outer ends thereof are mounted on the closure member so as to rest on top of the flange 11 thereof. Any pressure exerted by the cams is thus directly transmitted to the top of the flange 11 for an efficient compression of the gasket located underneath this flange.

"As illustrated in Figure 2 of the drawings the handle 13 of the closure member is provided with a central pocket 20 having a hole in the middle of the pocket. The piston rod 21 of the air pump 22 projects thru this hole and has fastened thereto at the top the V-shaped offset middle section of the pump handle 23. This offset section of the handle is adapted to nest into the

pocket 20 of the handle 13 to normally hold the pump handle 23 parallel to the closure handle 13 and space the two handles so that both may be gripped with one hand in carrying the sprayer.

"The piston rod 21 also passes thru the V-shaped offset section in the locking bolt 15 so as to permit this bolt to freely rock on the closure member without interference from the piston rod. At the same time the piston rod serves as a locking member for the locking bolt as it keeps it from sliding endwise out of engagement with the bearings in the handle 13 after the closure member is removed from the head.

"As will be noted from the description and the figures of the drawings, the sealing movement of the handle 13 is downward so that with a firm support of the tank of the sprayer any amount of pressure can be conveniently exerted on the handle for the closing movement thereof. The movement of the handle is a short one so that both the closing and the opening of the seal of the closure member is quickly accomplished with a quick movement of the handle.

"As will be seen from an inspection of Figure 2, the cylinder of the air pump 22 is threaded into the inverted central pocket 24 struck up from the bottom of the closure member 10 and is thus securely held suspended therefrom."

4. Modified forms of handles and locking bolt structures are disclosed in figures 4–8 of the patent drawings and described in the patent specifications. Such modifications will not be specifically described herein since the language of the claims in suit is adequately illustrated in figures 1–3 reproduced hereinafter and described above.

5. Plaintiffs rely on claims 1, 2, 7, 8, and 9 of the patent in suit. These claims define mechanical structures for seating a cover on the opening of a tank adapted to contain fluid under pressure. Each of the patent claims is directed to structures in which a cover is initially seated against a tank opening and then additional forces are applied to effect a final seating of the cover.

6. The patent claims in suit are reproduced with indentations and added emphasis to facilitate identity and an accurate understanding of the structure defined.

"Claim 1

"In a pressure tank the *combination* of

"(1) a cylindrical *tank* open at one end,

"(2) an open *head* for said open end, said head comprising

"(2a) a substantially cylindrical *flange* formed inwardly at both ends to provide a larger opening at one end and a smaller opening at the other end of the flange,

"(1a) the open end of said tank being attached to said flange at the smaller opening thereof to provide a *seat* surrounding the open end of said tank,

"(3) a *cover* for said opening in said head adapted to move into the larger opening of said head and be seated on said seat surrounding the smaller opening thereof and the opening of said tank,

"(2b) inclined and spaced locking *flanges* formed by the overhanging flange surrounding the larger opening of said head,

"(4) a *locking bolt* extending diagonally over said cover and mounted to rock thereon,

"(5) a *cam* carried at the ends of said bolts and projecting radially from said cover so as to move thru the spaces between said locking flanges on the insertion of said cover into the head, and engage under said flanges on the rotation of the cover on the seat of the head and

"(6) *means* for rocking said bolt to move said cams against said lock-

ing flanges and force said cover onto said seat.

### "Claim 2

"In *combination* with an open *head* for pressure tanks having a *seat* surrounding the opening in the head,

"(1) a *cover* for the opening in said head adapted to rest on said seat,

"(2) a *cam flange* partially surrounding said opening and seat and vertically spaced therefrom,

"(3) a movable *locking bolt* carried by said cover and arranged thereon to make contact with said cam flange on the movement of said cover on said seat so as to cause said cam flange to force said cover with increasing pressure onto said seat and provide an initial sealing effect of the cover over the opening and

"(4) *means* effecting a movement of said locking bolt to increase the pressure on the cover by the bolt and the cam flange."

### "Claim 7

"In a pressure container the *combination* of

"(1) a *seat,*

"(2) a *cover* for said seat,

"(3) a *cam member* associated with said seat

"(4) a *bolt member* on said cover and movable therewith for engagement with said cam member to effect preliminary sealing between said cover and said seat, said bolt member being movable with respect to said cover and having

"(5) *means* thereon cooperating with said cam member to effect final locking and sealing between said cover and seat.

### "Claim 8

"In a pressure container the *combination* of

"(1) a *seat,*

"(2) a *cover* for said seat,

"(3) a *cam member* associated with said seat,

"(4) a *locking member* on said cover and movable therewith for engagement with said cam member to effect a preliminary sealing between said cover and said seat, and

"(5) *cam means* provided on said locking member and movable with respect to said cover and cooperating with said seat cam member to effect further locking and sealing between said cover and said seat.

### "Claim 9

"In a pressure container the *combination* of

"(1) a *seat,*

"(2) a *cover* for said seat,

"(3) a *cam member* associated with said seat,

"(4) a *bolt member* on said cover and movable therewith with the ends thereof projecting from the cover for engagement with said cam member to effect a preliminary sealing between said cover and said seat, and

"(5) *means* for movement of said bolt member with respect to said cover to have said bolt member cooperate with said cam member to effect further locking and sealing between said cover and seat."

### Prior Art

7. Defendant urged that the Bullock patent claims in suit are invalid and do not define patentable invention. Defendant referred to the disclosures of twenty-nine prior patents identified as follows:

### United States Patents

| | | |
|---|---|---|
| Mather | 129,842 | July 23, 1872 |
| Flanders | 234,865 | Nov. 30, 1880 |
| Ward | 266,564 | Oct. 24, 1882 |
| Tripp | 288,139 | Nov. 6, 1883 |
| Rettig | 502,635 | Aug. 1, 1893 |
| Peacock | 610,720 | Sept. 13, 1898 |
| Ambler | 700,398 | May 20, 1902 |
| Howell | 714,376 | Nov. 25, 1902 |
| Chapin | 715,982 | Dec. 16, 1902 |
| Wensley | 839,240 | Dec. 25, 1906 |
| Forster | 945,927 | Jan. 11, 1910 |
| Lawless | 1,108,765 | Aug. 25, 1914 |
| Powers, et al. | 1,243,974 | Oct. 23, 1917 |
| Kroupa | 1,369,249 | Feb. 22, 1921 |
| Macdonough | 1,397,320 | Nov. 15, 1921 |
| Wacker | 1,493,058 | May 6, 1924 |
| McBride | 1,534,131 | Apr. 21, 1925 |
| Davis | 2,036,125 | Mar. 31, 1936 |

(Application filed Jan. 24, 1934)

### Foreign Patents

| | | | |
|---|---|---|---|
| Hoffmann, et al. | Austrian | 35,780 | Jan. 11, 1909 |
| Wolfrum | Austrian | 38,751 | Sept. 10, 1909 |
| Fleischmann | German | 235,517 | June 13, 1911 |
| Basse, et al. | German | 332,789 | Feb. 7, 1921 |

### Patents of Record in Bullock Patent Application File

| | | |
|---|---|---|
| Von Roden | 376,690 | Jan. 17, 1888 |
| Conover | 1,361,141 | Dec. 7, 1920 |
| Brandt | 1,295,420 | Feb. 25, 1919 |
| Church | 1,603,903 | Oct. 19, 1926 |
| Parrott | 1,971,727 | Aug. 28, 1934 |
| Roy | 2,033,305 | Mar. 10, 1936 |
| Ludington | 2,045,303 | June 23, 1936 |

8. Defendant admitted that the Brandt, Parrott, Church, Ludington, and Roy patents are not pertinent to any patent claims now in suit. Said patents require no further consideration. The Flanders, Tripp, Rettig, Wensley, Powers, et al., Kroupa, and Wacker patents were not discussed by defendant's expert, are not urged in defendant's requested findings, and also require no further consideration.

9. Davis patent 2,036,125 resulted from an application for patent filed January 24, 1934, a date more than two years prior to the filing date of the Bullock patent in suit. Davis discloses a container having a removable cover provided with locking means. Said means comprise cam surfaces for engagement with inclined flanges on the container. As shown in the Davis patent drawings,[2] a container 1 is provided with a cover

2. Reproduced (B) at end of findings.

10 engaging the open mouth of the container. An internal flange 3 defining the mouth of the container is engaged by a sealing gasket 8 carried by the cover 10. Projecting flanges 4 extend outward of the internal flange 3 and provide inclined or cam surfaces 6. The cover 10 carries a rotatable handle or bail 15 having inturned ends 13. The ends 13 are shaped to provide cam elements 14 having high and low faces to engage the inclined surfaces 6. The patent drawings indicate that the container and the cover may be made of glass or porcelain. The patent specification states that the container may be constructed of any suitable material. As shown in figure 7, the locking handle 15 is turned so that the cams 14 are disengaged from the inclined surfaces 6 to free the cover 10 to be turned and removed from the container 1. As shown in figure 6, the locking handle 15 is turned so that cams 14 engage the inclined surfaces 6 to pull the cover 10 against the gasket 8 for locking the cover to the container. The Davis patent states:

> "This invention relates to a locking means for containers and has for the primary object the provision of a device of the above stated character which will efficiently seal the cover to the container and provide to the container a carrying medium which when placed in one position will permit easy and quick application and removal of the cover from the container and when placed in a second position will draw the cover into tight engagement with said container to effect the seal."

The Davis patent construction provides means for initially sealing the cover to the container by inclined surfaces 6, and for effecting further and final sealing and locking by the action of cams 14. The Davis patent does not mention that the container is adapted to hold fluids under pressure. Cover locking means, which " * * * when placed in a second position will draw the cover into

tight engagement with said container to effect the seal," indicate that the Davis construction is adapted to contain fluids under at least some pressure above atmospheric pressure. The Davis patent was not made of record in the Bullock patent application file by the patent examiner in the United States Patent Office.

10. Hoffmann, et al. Austrian patent 35,780 discloses a cover construction for milk cans. As shown in figure 1 of the Austrian patent drawings,[3] a container 1 is provided with a cover 8 which engages a gasket 16 supported by an inwardly projecting flange 15. The cover 8 is provided with spring arms 9 having projecting ends 11. The ends 11 engage the undersides of inwardly projecting inclined flanges 14 carried by the container ring 3. Partial rotation of the cover 8 causes the ends 11 to engage the inclined flanges 14 to effect an initial seal between the cover and the container. A transverse rod having a cam 12 and having an operating handle 13 is rotatably carried by the upper side wall of the cover 8. Movement of the handle 13 upward to the position illustrated in figure 1 causes the cam 12 to press downward on the center of the spring arms 9. The cam 12 produces an additional and final sealing pressure, urging the cover 8 against the gasket 16. When the cover 8 is to be removed, movement of the cam 12 by handle 13 reduces the pressure of the cover against the gasket and allows the cover to be rotated to disengage the arm ends 11 from the inclined flanges 14. The Austrian patent specification does not disclose specifically that the milk container illustrated is a pressure tank. The cover seal construction taught by this patent is effective to seal against at least some pressure. The Hoffmann patent is not of record in the Bullock patent application file.

11. Peacock patent also discloses a cover construction for milk cans. Referring to the Peacock patent drawings,[4] a cup-shaped cover 5 extends into the

---

3. Reproduced (C) at end of findings.

4. Reproduced (D) at end of findings.

neck 2 of the container 3. The cover 5 is provided with a rim 7 at the upper end, carrying a rubber gasket 8 for contact with the upper beaded flange 4 of the neck 2. A pair of oppositely-disposed inwardly projecting flange members 14 is fastened to the container neck 2. The cover 5 carries a transverse shaft 9 having an operating handle 16 to rotate the shaft. Each end of the shaft 9 is provided with a cam-shaped projection 12 for engagement with the undersides of the inwardly-projecting flanges 14. As illustrated in figures 2 and 4, the cover 5 is initially held against the container bead 4 by the flat portion of cams 12. Movement of the operating handle from right to left rotates the cams 12 to the positions illustrated in figures 3 and 5 for applying a final sealing and locking action. The Peacock patent specification states "* * * that while this improved closure is particularly adapted for use with milk receptacles or cans it nevertheless can be used with equal facility with other receptacles * * *." Said specification does not specifically mention pressure containers. The Peacock closure is effective to seal against at least some pressure. The Peacock patent is not of record in the Bullock patent application file.

12. Defendant has urged that the closure member 5 disclosed in the Peacock patent is adapted to fit into the upper part 3 of the container disclosed in the Hoffmann patent. Such a substitution is possible without requiring alterations other than minor changes of size obvious to one skilled in the art. However, there is no suggestion in the prior art that the closure of the Peacock domestic patent was ever intended for combination with the container of the foreign Hoffmann patent.

13. Von Roden patent, cited by the Patent Office examiner, also discloses a closure or cover for milk cans. The Von Roden construction is generally similar to that taught by Peacock. Referring to the Von Roden patent drawings,[5] a milk can A is provided with a cover B. The cover carries a transversely disposed bolt C having cams b on its ends for engagement with flanges g secured to the container A. The flanges do not have inclined or cam surfaces such as recited in the several claims in suit for effecting an initial or preliminary sealing effect.

14. Conover patent, cited by the Patent Office examiner, also discloses a cover for milk cans. The Conover construction is similar to that taught by Peacock and by Von Roden, but provides a bail-shaped yoke in place of a transverse locking bolt. The Conover clamping ears do not have the inclined or cam surfaces recited in the claims in suit.

15. The Mather, Ward, Howell, Forster, Lawless, and Ambler patents show various closure constructions for canisters, churns, milk cans, culinary vessels, and receptacles. None of these patents teach the combination of two cam surfaces, one on a container for effecting initial sealing and another on the closure member for effecting final sealing of the closure member. These patents illustrate the general state of the art relating to containers and closures prior to the Bullock application for patent, but do not show each and all of the constructional details recited in the claims in suit.

16. The Chapin, Macdonough, and McBride patents show various pressure tanks and vessels having closure constructions utilizing screw or segmental inclined flange securing means. None of these patents teach the combination of two separate cam surfaces for effecting initial sealing and then final sealing of the closure to the pressure container.

17. Wolfrum Austrian patent 38,751 [6] discloses a cam closure construction including curved bars 1 and 2 secured to the can adjacent the can opening and extending in planes inclined to the plane of the can opening. The removable closure includes a lever or bail 5 pivoted to

---

5. Reproduced (E) at end of findings.

6. Drawings (F) reproduced at end of findings.

the closure on pins 6 and provided with projecting pins 4 engageable with the undersides of said inclined bars. The pins 4 are offset from the axis of pins 6. The closure may be placed on the container with the bail 5 upright and be partially turned to engage the pins 4 with the inclined bars 1 and 2 to effect an initial seal between the closure and the container. Movement thereafter of bail 5 downward to a horizontal position causes the offset pins 4 to exert a cam action against the inclined bars 1 and 2 to effect a final sealing pressure of the closure against the container. The specific details of the closure construction and of the sealing gasket position are not clearly described or illustrated in this foreign patent.

18. Fleischmann German patent 235,-517[7] discloses a can closure construction including a closure 6 provided with a pair of outwardly facing inclined grooves 8. A lever or bail 1 pivotally mounted on bars 3 secured to the container is provided with inwardly facing cam surfaces 9 engageable with the inclined grooves 8 of the closure. The closure may be placed on the container with the bail 1 in a horizontal position and be partially turned to engage the inclined grooves carried by the closure with the cam surfaces carried by the bail to effect an initially sealing action. The bail 1 may then be swung over the top of the closure to cause the cam surface 9 to firmly urge the closure against the container for final sealing pressure.

19. Basse, et al. German patent 332,-789 discloses a metallic closure for containers such as milk cans. The upper edge of the container is fitted with an external ring having outwardly projecting inclined flanges. The cover includes an outer member which carries a pair of clamping arms. The lower end of each arm projects inwardly under the inclined flange. The upper end of each arm is mounted on an eccentric pin on the end of a transverse rod. A bail secured to the rod is used to partially rotate said rod and eccentrics to tension the arms and thereby firmly secure the cover to the container. The cover may be placed on the container with the arms full down and be partially turned to engage the arms with the inclined flanges for effecting an initial seal. The bail may thereafter be used to partially rotate the eccentric pins for effecting a final sealing pressure of the cover against the container.

20. Prior to any date available to plaintiffs, it was a common expedient to use a locking bolt or bail having a cam or cams eccentric to the rotary axis of the bolt or bail for pressing a cover against a container opening with the requisite degree of sealing pressure. Such constructions are illustrated, for example, in the prior Davis, Hoffmann, Peacock, Von Roden, Wolfrum, Basse, and Fleischmann patents discussed above. It was also a common expedient to use inclined flanges or surfaces on or secured to a container for engagement by projecting members of a cover for pressing a cover into engagement with a container opening. Such constructions are illustrated, for example, in the prior Davis, Hoffmann, Wolfrum, Basse, and Fleischmann patents discussed above. There is evidence that the patentee Davis had, and successfully tested, a metal model of the container and closure locking means disclosed in his patent noted in finding 9, as early as November 23, 1933.

### Invalidity

21. All of the several parts and elements set forth in each of Bullock patent claims 1, 2, 7, 8, and 9 are found in the constructions taught by various of the several prior patents discussed herein, and those parts and elements of the prior patents operate in the same or in a similar manner and produce the same results as defined in said patent claims.

22. Claim 8 in suit recites in a pressure container the combination of a seat, a cover, a cam member, a locking member, and cam means on the locking mem-

---

**7.** Drawings (G) reproduced at end of findings.

ber. A similar combination of elements is disclosed in the prior Davis patent and also in the prior Hoffmann patent. The Davis patent drawings show a container 1 made of glass or porcelain with a cover 10 of like material. The Davis container is a pressure container. Claim 8 does not recite a specific container material and does not recite a specific pressure range. The Davis construction includes in combination (1) a *seat* 3 formed as an inwardly projecting flange, (2) a *cover* 10 for said seat 3, (3) a *cam member* 6 associated with said seat 3, (4) a *locking member* 15 on said cover 10 and movable, as illustrated in figure 4 of the Davis drawings, for engagement of the ends 13 of the member 15 with the cam member 6 to effect a preliminary sealing between said cover 10 and said seat 3. The Davis construction also includes in the combination (5) *cam means* 14 provided on said locking member 15 and movable with respect to said cover 10, different positions of member 15 being illustrated in figures 6 and 7 of the Davis patent drawings, and cooperating with said seat cam member 6 to effect further locking and sealing between said cover 10 and said seat 3. The subject matter defined in claim 8 is clearly described and illustrated in the prior Davis application for patent, and claim 8 of the patent in suit is unpatentable to plaintiff for lack of novelty.

23. The drawings of the prior Hoffmann patent show a container 1 with a cover 8. The Hoffmann construction is described as a closure for milk cans or the like. Such milk cans may develop internal pressures above atmospheric pressure. The Hoffmann construction includes in combination (1) a *seat* 15 formed as an inwardly projecting flange, (2) a *cover* 8 for said seat 15, (3) a *cam member* 14 in the form of inwardly projecting flanges associated with said seat 15, (4) a *locking member* in the form of spring arms 9 on said cover 8 and movable, as illustrated in figure 2 of the Hoffmann drawings, for engagement of the ends 11 of the member 9 with the cam member 14 to effect a preliminary seal-

ing between said cover 8 and said seat 15. The Hoffmann construction also includes in the combination (5) *cam means* 12 at the center of cover 8 and bearing on said locking member 9 and movable with respect to said cover 8 by movement of the operating handle 13 and cooperating through said member 9 with said seat cam member 14 to effect further locking and sealing between said cover 8 and said seat 15. The subject matter defined in claim 8 is clearly described and illustrated in the prior Hoffmann patent, and claim 8 of the patent in suit is unpatentable for lack of novelty.

24. Claim 7 in suit is a combination claim similar to claim 8 but defines the locking member (4) as a *bolt* member *movable* with respect to said cover, and does not specify that the means (5) on the locking member be *cam* means. A similar combination of elements is disclosed in the prior Davis patent. The Davis patent drawings show a container 1, a seat 3, a cover 10, a cam member 6, a bail member 15 rotatable on the cover 10 for engagement of the ends 13 of member 15 with the cam 6, and means in the form of cams 14 on the member 15 to cooperate with cams 6 to effect final locking and sealing between the cover and the seat. The Davis bail member 15 is the equivalent of the Bullock bolt member 15. The Bullock bolt member 15 includes an offset central portion 16, and the Bullock specification describes a bail-shaped locking bolt which is illustrated for two specific embodiments of the Bullock construction. The Davis bail member 15 is a bolt member. The subject matter defined in claim 7 is clearly described and illustrated in the prior Davis application for patent, and claim 7 of the patent in suit is unpatentable to plaintiff for lack of novelty.

25. The subject matter defined in claim 7 is also described and illustrated in the prior Wolfrum Austrian patent. The Wolfrum patent drawings show a container having a seat engaged by a cover. The container is provided with cam members in the form of inclined bars 1 and 2. The cover is provided with

a bail member 5 movable with the cover for engagement with the inclined bars to effect preliminary sealing. The bail member 5 is provided with means in the form of offset projecting pins 4 to exert a cam action on the inclined bars and effect final locking and sealing between the cover and the container seat when the bail member 5 is moved to the horizontal position illustrated in figure 2 of the Wolfrum patent drawings. Claim 7 of the patent in suit is unpatentable to plaintiff for lack of novelty.

26. Claim 9 in suit is also a combination claim similar to claim 7, but specifies that the ends of the bolt member *project* from the cover, and specifies means for *moving* the bolt member to effect *further locking and sealing*. The combination of elements disclosed in the prior Davis patent, as noted in finding 24, includes all the elements of claim 7, and also includes projecting ends 13 on the bail member 15 and means for moving said member as recited in claim 9. The ends of the bolt members of the illustrated Bullock constructions project radially outward and the ends of the Davis patent bail member project radially inwardly. The recital of claim 9 is not limited to ends projecting outwardly. The construction disclosed by Davis functions in the same manner to secure the same result as that defined in claim 9. Claim 9 of the patent in suit is unpatentable to plaintiff for lack of novelty.

27. The subject matter defined in claim 9 is also described and illustrated in the prior Wolfrum Austrian patent. As noted in finding 25, Wolfrum discloses the elements recited in claim 7. Wolfrum also discloses that the offset pins 4 at the ends of the bail member project outwardly from the cover for engagement with the cam bars 1 to effect preliminary sealing, and discloses means in the form of the handle portion of the bail for moving the member with respect to the cover to cause the pins 4 to effect further locking and sealing. Claim 9 of the patent in suit is unpatentable to plaintiff for lack of novelty.

28. Claim 2 in suit is a combination claim reciting, in combination with an open head and a seat surrounding the opening, (1) a cover, (2) a cam flange, (3) a locking bolt, and (4) means to move the bolt. Claim 2 specifies that the cam flange partially surrounds the opening and seat and is vertically spaced therefrom. This claim also specifies that the locking bolt is carried by the cover and is arranged to contact the cam flange to force the cover with increasing pressure onto the seat. A similar combination of elements is disclosed in the prior Davis patent. The Davis patent drawings show a container 1 having an open head with seat flanges 3 and 7 surrounding the opening. The Davis cover 10 is adapted to rest against a sealing gasket on said seat flanges. A cam flange 6 projects from and partially surrounds the opening and seat, and is spaced vertically below the planes of said seat flanges. The Davis locking bail 15 is carried by the cover 10, and its ends 14 make contact with the cam flanges 6 on movement of the cover on the seat gasket and provide an initial sealing effect. The handle portion of the bail 15 provides means for effecting movement of the bail member to increase the pressure on the cover by means of the contact of the cam ends 14 against the cam flanges 6. The handle portion of the bail member 15 of Davis is functionally similar to the handle portion of the bail members 25 and 33 shown in figures 4, 5, 6, and 8 of the Bullock patent drawings. A locking bolt member in the form of a bail is the functional equivalent of a straight bolt having a central projecting handle such as the handle 17 shown in figure 1 of the Bullock drawings, or the handle 16 shown in figures 1, 2, and 3 of the Peacock patent drawings. The subject matter defined in claim 2 of the patent in suit is clearly described and illustrated in the prior Davis application for patent, and claim 2 is unpatentable to plaintiff for lack of novelty.

29. Claim 1 in suit is a combination claim reciting the combination of (1) a

tank, (2) an open head for the tank, (3) a cover, (4) a locking bolt, (5) a cam at the ends of the bolt, and (6) means for rocking the bolt. This claim specifies that the head comprises a cylindrical flange formed inwardly at both ends to provide inclined and spaced locking flanges at the outer opening of the head and to provide a seat where the head is attached to the tank. This claim also specifies that the head provides a larger opening at one end and a smaller opening at the other end, that the cover is adapted to move into the larger opening, that the bolt extends diagonally over the cover and is mounted to rock, and that the cams project radially from the cover. The complete terminology of claim 1 is tabulated in finding 6. A similar combination of elements is disclosed in the prior Davis patent. The Davis patent drawings show a container or tank 1 having an opening at the top. The opening is defined by integral flanges constituting a head, and is adapted to be closed by a cover 10. When closed, container 1 constitutes a pressure tank. The Davis locking bail 15 is the equivalent of a locking bolt and has a cam 14 at each end thereof. The handle portion 15 is a means for rocking the locking member. The head portion of container 1 is substantially cylindrical and includes an inwardly projecting flange 3 and an outwardly projecting flange 4, the latter providing inclined and spaced locking flanges spaced by notches 5. The cover 10 includes a portion 11 adapted to move into the opening of the head. The locking bolt in the prior Davis construction includes the rod members 13 connected by the bail 15 extending diagonally over the cover 10 and mounted to rock thereon. A cam 14 is carried at the ends of the rod members and projects radially inward from the periphery of the cover 10 and moves through the space 5 between the locking flanges 4 upon insertion of the cover 10 on and in the head, and the cams engage under the locking flanges 4 on rotation of the cover 10 on its seat. The Davis bail member 15 is a means for rocking the bolts 13 to move the cams 14 against the locking flanges 4 to force the cover onto the seat. The head details permitting the cover to be moved *into* the larger opening of the head as recited in claim 1 are not specifically disclosed in the prior Davis patent. The Davis construction is the full equivalent of the construction recited in claim 1 and includes in combination the same or equivalent elements adapted to coact to function in the same or an equivalent manner to produce the same result. The subject matter defined in claim 1 of the patent in suit is clearly described and illustrated in the prior Davis application for patent, and claim 1 is unpatentable to plaintiff for lack of novelty.

30. The specific open head construction recited in claim 1 in suit is disclosed in the prior Austrian Hoffmann patent. The Hoffmann head is a substantially cylindrical member 3 integral with the top of the container 1, and provides a larger opening at the upper end and a smaller opening or neck at the lower end. The Hoffmann head includes at its smaller opening a ring or flange 15 provided with a gasket 16 forming a seat surrounding the open end of the tank 1. The Hoffmann cover 8 is adapted to move into the larger opening of the head and to be seated on the gasket 16 surrounding the smaller opening. The Hoffmann head includes inclined and spaced locking flanges 14 extending inwardly from the larger opening of the cylindrical head and overhanging the smaller opening. The Hoffmann head construction is a functional equivalent of the construction illustrated in the Bullock patent drawings and defined in the portion of Bullock claim 1 relating to an open head construction. The differences between this subject matter recited in claim 1 and that disclosed in the prior art are such that the subject matter as a whole would have been obvious to a person having ordinary skill in the pressure tank art at the time the Bullock construction was devised. Claim 1 of the patent in suit is unpatentable to plaintiff since the dif-

ferences between the structure recited and the prior art are such that the subject matter would have been obvious.

31. There is no language in the several claims in suit limiting the alleged inventions to tank and closure constructions adapted to withstand internal pressures of the order of one hundred pounds per square inch. The Bullock patent specification does not disclose any specific pressure values. Likewise the patent claims in suit and the patent specification do not specify that the inclination of the locking flanges or of the cam members is critical or limited to any specific ranges. The selection of suitable inclinations for closure devices for containers of any selected fluid pressures is a mere matter of design obvious to one having ordinary skill in the container art.

32. The Davis, Hoffmann, and Wolfrum patents taught the container art various forms of inclined locking flanges located externally and internally of container openings for cooperating with closure devices having both initial and final sealing actions. The Davis, Peacock, Von Roden, and Wolfrum patents taught the container art various forms of closure devices having locking bolts with cam action ends for effecting increased closure sealing pressure. The arrangement of particular elements old *per se* into an old combination for producing an old result is a mere matter of choice of design and mechanical skill obvious to any person having ordinary skill in the container art.

33. Claims 1, 2, 7, 8, and 9 of the Bullock patent are unpatentable and invalid for lack of novelty over the disclosures of prior patents as more particularly set forth in findings 22 through 32.

34. Plaintiff Bullock testified that plaintiff-licensee has manufactured and sold at least eight hundred and fifty thousands of sprayers to the public since 1935, and that such commercial success of said sprayers was believed directly attributable to the alleged invention of the patent here in suit. Plaintiff-licensee

also supplied the defendant with about two hundred and twenty-five thousands of sprayers. Plaintiffs' petition in this case alleged in effect that sprayers procured by defendant from other suppliers infringed a total of four United States Letters Patent issued to plaintiff Bullock. Plaintiffs limited this claim to one patent prior to trial. The asserted commercial success of sprayer constructions embodying the alleged invention disclosed in the patent in suit may have been also attributable in part to certain improvements disclosed in plaintiffs' other patents, dropped from this suit, as well as to unpatented details. The clear lack of patentable novelty of the constructions defined by the claims in suit is not balanced out by any degree of commercial success.

## Infringement

35. No specimen sprayer charged as an infringement by plaintiffs was produced by defendant. A series of thirteen engineering drawings by defendant's Chemical Warfare Service are illustrative of the construction of one or more sprayers procured by defendant during the 6-year period preceding the filing of plaintiffs' petition. Said drawings illustrate a sprayer tank and closure construction that is essentially the same as that illustrated in figures 1, 2, and 3 of the Bullock patent in suit, a construction which clearly responds to the recital of each of the several claims relied upon by plaintiffs. A complete sprayer device constructed in accordance with said engineering drawings is plaintiffs' exhibit 17A and 17B herein. At the trial, defendant's counsel in response to inquiry stated: "Well, I don't think there is a real serious question as to infringement in so far as we are presently informed, * * *." Defendant used, without a license from plaintiffs, a structure covered by claims 1, 2, 7, 8 and 9 of the Bullock patent 2,105,451.

## Conclusion of Law

Upon the foregoing findings of fact, which are made a part of the judgment

herein, the court concludes as a matter of law that claims 1, 2, 7, 8 and 9 of Bullock patent 2,105,451 are invalid, and plaintiffs' petition is therefore dismissed.

BULLOCK
2,105,451

DAVIS
2,036,125

HOFFMANN, et al.

Austrian 35,780

PEACOCK
610,720

*Fig.2.* *Fig.3.* *Fig.7.* *Fig.6.* *Fig.1.* *Fig.4.* *Fig.5.*

VON RODEN....376,690

*Fig.1.* *Fig.2.*

WOLFRUM
Austrian Patent 38,751

E

F

*Fig.1* FLEISCHMANN
German
Pat.
235517

*Fig.2*

G